HARRIS *et al.*, *Plaintiffs in Error*, v. ROSS.

1. **Statute of Limitations:** DISABILITY OF MINORITY: DISAFFIRM-ANCE OF DEED BY HEIRS. Where a married woman, who is a minor, with the concurrence of her husband, conveys land which descended to her from her ancestor, and dies before attaining her majority, leaving as her sole heir the plaintiff, also a minor, the latter is vested with the right to disaffirm such conveyance, and has the statutory period of three years after attaining her majority within which to do so, and the institution of an action within such time for the recovery of said land is a valid disaffirmance of the conveyance.

2. ——: ——: ——. The conveyance of the grantor and her husband was effectual to pass the title during their joint lives, or during his life, if a tenant by curtesy, and the wife not having survived the particular estate, no cause of action ever accrued to her, and the statute of limitations never commenced to run in her favor; the heir, therefore, was the first person entitled to sue, and against whom the statute first began to run, and, being an infant, she had the full statutory period within which to disaffirm the deed and commence her action.

*Error to Morgan Circuit Court.*—HON. E. L. EDWARDS, Judge.

REVERSED.

*R. F. Buller* for plaintiffs in error.

(1) A conveyance made by a minor may be avoided in various ways; among others, by bringing an action of ejectment for the recovery of the land at any time within the period of the statute of limitations. *Cole v. Pennoyer*, 14 Ill. 158; *Chadburn v. Radcliff*, 30 Me. 354; 1 Am. Lead. Cases (4 Ed.) 256, and cases cited; Schouler Dom. Rel. 585; Tyler on Infancy and Coverture, 67; Reeves' Dom. Rel. 372, and note. And in this state the period is not less than three years after attaining majority, and

may be ten years, depending on the age of the party when the conveyance is made. 1 R. S., sec. 3222; *Peterson v. Laik*, 24 Mo. 544; *Caho v. Endress*, 68 Mo. 224, and cases cited; *Huth v. Carondelet*, 56 Mo. 203. And no previous act of disaffirmance is necessary before bringing ejectment. *Chadburn v. Radcliff*, 30 Me. 354; *Cole v. Pennoyer*, 14 Ill. 158; 1 Am. Lead. Cases, 256; *Youse v. Norcum*, 12 Mo. 549; *Peterson v. Laik*, 24 Mo. 541; *Jackson v. Carpenter*, 11 Johns. 538. And this is especially the case in reference to the disaffirmance by a married woman. *Magee v. Welch*, 18 Cal. 155. And such disaffirmance may be by the heir of a deceased minor. *Ferguson v. Bell*, 17 Mo. 347, 351. Previous to the revision of 1865, a woman under twenty-one was a minor. *Caho v. Endress*, 68 Mo. 224, 228, (2) Plaintiff's mother never had a right of action to recover the possession of the land, and plaintiff had none until the death of her father, in 1861, and she was then a minor and still had three years after attaining her majority. *Dyer v. Bannock*, 66 Mo. 422; *Valle v. Obenhauser*, 62 Mo. 81; *Carr v. Dings*, 54 Mo. 95; *Miller v. Bledsoe*, 61 Mo. 96; R. S., sec. 3223. (3) A married woman who is a minor need not refund before maintaining ejectment in avoidance of her deed. *Dill v. Bowen*, 54 Ind. 204; 2 Cent. Law Journal, 343; Reeves' Dom. Rel. 371, and note; *Curry v. Barton*, 32 Mich. 30; 15 Gratt. 329; 27 Vt. 268; 110 Mass. 399; 6 Gray, 282. (4) As the law stood in 1857 and 1858, Caplinger, the husband, had the right to the possession of his wife's land, which right he could and did convey, and such conveyance deprived his wife and her heirs of all right of action for the possession until his death, in August, 1861, and this, whether he was tenant by the courtesy initiate or not. *Bryan v. Wear & Hickman*, 4 Mo. 106; *Valle v. Obenhause*, 62 Mo. 81; *Brown v. Moore*, 74 Mo. 633; *Beal v. Harman*, 38 Mo. 435.

*T. M. Rice* for defendant in error.

(1) Curtesy is an estate to which, by law, a man is entitled, on the death of his wife, in the lands of which during the coverture, she was seized, provided they have had birth of issue, alive, capable of inheriting. Bouvier's Law Dictionary. Curtesy initiate implies birth of issue, and until the birth of issue, there can be no curtesy initiate. Bouvier's Law Dictionary; 1 Wash. on Real Property (3 Ed.) 166. Thomas J. and Martha Caplinger's deed to property in dispute, was made July 27, 1857; the plaintiff, Nancy, was born October 5, 1857, some three months after the date of the deed. So that it is not true, as assumed by plaintiff, that plaintiff's father, at the date of the deed, was a tenant by the curtesy initiate. His rights at the date of the deed were merely inchoate. (2) The deed to Masters, from Martha A. Caplinger, was not void, but only voidable. Tyler on Inf. & Cov., sec. 14; *Ferguson v. Bell*, 17 Mo. 347; *Baker v. Kennett*, 54 Mo. 82. (3) Martha Caplinger's deed to Masters conferred upon him, if not a rightful legal title, in form, an absolute title, and, coupled with continuous adverse possession, is sufficient to sustain the statute of limitations. *Teller v. Burtis*, 9 Johns. 174; *Young v. Ellis*, 13 Johns. 118; *Gilliland v. Woodruff*, 1 Conn. 276; *Honebert v. Trinity Church*, 24 Wend. 587. And it has been held that possession, under a void deed, with claim of title, is sufficient to give effect to the statute of limitations. *Society of Cincinnatus v. Osborn*, 2 Ala. L. J. 457; *Hilton v. Bender*, 2 Han. (4 S. C.) 270; *Hall v. Low*, 102 U. S. 461. A deed, to constitute color of title, must, apparently, transfer title. *Coleman v. Beings*, 89 Ill. 183; *Mulford v. LeFrank*, 26 California, 88.

RAY, J.—This is an action of ejectment for the undi-

vided one-half of the northwest quarter of the south-
west quarter of section eighteen, township forty-two,
range sixteen, in Morgan county, Missouri.   The petition
was in the usual form, alleging, among other things, that
plaintiffs were husband and wife, and that the real estate
in question belonged to the wife, Nancy Harris.   The
suit was brought in the Morgan circuit court, August 20,
1878.   The answer, in addition to a general denial, set
up the statute of limitations in bar of the action.   The
replication, in answer to the new matter set up in the
answer, alleged that the plaintiff, Nancy Harris, is the
real owner of the land, and that she was a minor, under
age, until within three years next before the bringing of
this action, and that the statute of limitations is no bar
to her recovery.

The material facts of this case, as gathered from the
record, are as follows :    That one Martha Caplinger, the
wife, of Thomas Caplinger, is the common source of title ;
that she was seized, in fee, of the undivided one-half of
the land in controversy at the date of her marriage with
her husband, Caplinger ;    that there was born of this
marriage one child, only, to-wit, Nancy Harris, the plain-
tiff in this action, who was born October 5, 1857 ;
that said Martha Caplinger, the mother of said plaintiff,
Nancy, was born March 23, 1838, married Thomas Cap-
linger October 22, 1856, and died in June, 1858, being at
the date of her death a minor, under twenty-one years
of age ;  that on July 27, 1857, some three months before
the birth of her said daughter, Nancy, the plaintiff, said
Martha and her husband (in conjunction with her brother,
William French, who was seized of the other undivided
half of said land), joined in a deed of general warranty
for the land in suit to one Masters, under whom the de-
fendant, by mesne conveyances, claims title to the whole
of said land ; that said Thomas Caplinger, the husband
of said Martha, survived his wife, and died August 10,
1861 ; that defendant, shortly after said conveyance to

Masters, took possession of said land, and has occupied the same continuously ever since, under claim and color of title, for a period of some twenty-one years; and that the plaintiffs were married in 1874; from all which it appears that the plaintiffs claim in right of the wife, Nancy, who claims to have inherited an undivided half of said land from her mother, Martha Caplinger, who died under coverture and a minor; and that defendant claims title to the whole tract under and by virtue of the said deed of said Martha and Thomas Caplinger, and her said brother, William French, to said Masters, made in July, 1857, as aforesaid, and, also, by adverse possession under the statute of limitations. It, also, further appears that plaintiffs claim the right of the wife to avoid said deed of her mother, by reason of her minority at the date of its execution, and, further, that the statute of limitations does not run against her, by reason of her minority.

The case was tried by the court, and after the introduction of testimony tending to establish the material facts hereinbefore set out, the court refused, among others, the following declarations of law, asked by the plaintiff:

"1. That if the court believed from the evidence that Isaac C. French died on July 20, 1838, owning the land in controversy, leaving two children, only, William L., born March 6, 1837, and Martha A., born March 23, 1838; that said Martha A. married Thomas J. Caplinger October 22, 1856, and died in June, 1858, and left surviving, her husband, who died August 10, 1861, and one child, the plaintiff Nancy, born October 5, 1857, and who was married to plaintiff, George T. Harris, in 1874, the court would find the issues for the plaintiffs, notwithstanding the court might further believe from the evidence that on the twenty-seventh of July, 1857, the said Martha and her husband made a conveyance of her undivided interest in the land to Andrew Masters, and that

defendant had been in possession ever since, claiming under said Masters.''

"2. That if the land descended to plaintiff Nancy's mother, while she was a minor, and that she died before she came of age, and plaintiff, Nancy, was a minor when her mother died, and not twenty-one years of age when this suit was brought, then adverse possession since 1857 or 1858 was no bar.''

The court gave, among others, the following declarations of law for the defendant:

"1. That if Martha J. Caplinger, at the time of making her deed to Masters, on the twenty-seventh of July, 1857, was a married woman, then the execution and delivery of the said deed created by operation of law a possession of the land in controversy in said Masters, adverse to any claim of said Martha Caplinger, and that if said Martha died in June, 1858, leaving plaintiff, Nancy, as her only heir, and that said Nancy has failed to bring her action for possession of the premises for more than ten years from the date of the said Masters' adverse possession, and more than three years after her mother's death, then the plaintiff is barred by the statute of limitations.''

"3. That the only evidence of the revocation of the said deed of Martha Caplinger to Masters is the bringing of this suit on the twentieth of August, 1878, more than twenty-one years after the said deed was made, which was not within a reasonable time, and said deed to Masters, therefore, estops plaintiff.''

"4. That if defendant, or those under whom he claims, have been in possession of the land since 1857, under claim of title, the plaintiff cannot recover.''

Whereupon the court found the issues for the defendant, and rendered judgment accordingly; and thereupon the plaintiffs, after an unsuccessful motion for new trial, bring the case here, by writ of error.

From the foregoing statement, it appears that Martha

Caplinger, the common source of title, was, at the date of the deed in question, July 12, 1857, a married woman, under twenty-one years of age; that at the time of her death, in June, 1858, she was twenty years and three months old, lacking nine months, only, of her majority; that she left an only daughter, the plaintiff, Nancy, as her sole heir at law, then an infant some nine months old; that there was no act of disaffirmance, prior to or other than the institution of this suit, on August 20, 1878, and that plaintiff, Nancy, was twenty-one years and three months old when this suit was brought.

On this state of facts, several legal propositions applicable to the case may here be stated, which, upon investigation, will be found, we think, abundantly sustained: That the deed in question was not void, but voidable, only, as to the wife, at her election, upon attaining her majority; but as to the husband, who labored under no disability, it was irrevocable; that the deed was operative and sufficient to pass, and did pass to Masters, the grantee, and those claiming under him, whatever right, seizin, title, and estate said wife or husband, or both of them, may have had to the land in question, at the date thereof; that the estate so transferred was the wife's fee, subject to whatever estate the husband had, under the facts, whether for their joint lives or that of the surviving husband, as tenant by the courtesy, the first of which, if such it was, ceased with the wife's death, in June, 1858, and the second with that of the husband, August 20, 1861; that the title, seizin, and estate so transferred to Masters, and those holding under him, rightfully remained and abided with the defendant, unless divested by some valid act of disaffirmance by the mother or the heir, timely and seasonably made, within a period analogous to that provided in the statute of limitations; that after the execution of the deed, and prior to a valid disaffirmance, the wife, during her life, and the heir after her death, had no title, seizin

or estate in the land so conveyed, but only the right to disaffirm said deed, and thereby regain the lost seizin and title, and, incident thereto and contemporaneous therewith, the right to maintain an action of ejectment, for the recovery of the possession of the land; that the wife, had she lived, upon attaining her majority, and not before, with the concurrence of her husband, if living, and without him, if not, had the right and power to disaffirm said deed by any of the acts which the law recognizes as valid and sufficient for that purpose; and among those acts is the institution of an action like the present, for the recovery of the land so conveyed by said deed; that at her death, in June, 1858, this right of disaffirmance descended to and vested in the plaintiff, Nancy, as her sole heir at law; and the only question now before us for determination is, *within what period of time* she is, by law, required to exercise the right and power of disaffirmance, so inherited from her mother. Tyler on Inf. and Coverture, pp. 62 to 83, and sections 19, 22, 23, 24, 25, 26, 27, 28, 29, 30; 25 Ill. 132; 5 Ohio St. 252 to 255; 52 Miss. 291; 75 Ill. 315; 2 Kent 195; 14 Ill. 158; 30 Maine, 354; *Peterson v. Laik*, 24 Mo. 541; 50 Mo. 203; 68 Mo. 225; 12 Mo. 550; 56 Mo. 211; 17 Mo. 347; 11 Johns. 539–541; 86 Ind. 88; 18 Cal. 155; 14 Johns. 124; 93 Ind. 423; 122 U. S. Rep. 300.

The question as to the time within which, under the law and the facts, the plaintiff, Nancy, was required to disaffirm the voidable deed of her mother, is by no means free from doubt and difficulty. The mother having died a married woman and in her minority, the time at which alone, under the law, she was empowered to disaffirm the deed never did arrive to her, and, of course, at her death there was, and could be, no disaffirmance of the deed in question. It may be conceded that the mother, had she lived to attain her majority, with the concurrence of her husband, if then living, would have had the right and the power, in several ways known to the law, to

disaffirm said deed (whether she might, in other ways, without the concurrence of her husband, have then disaffirmed the deed, need not now be determined), and it may be further conceded that if she had then failed to disaffirm the same, within a period analogous to that of the statute of limitations governing real actions (to-wit: ten years), she would have been forever barred of her right and power in the premises. At all events, however, it is quite clear that the plaintiff, Nancy, at her mother's death, as her sole heir at law, inherited this right and power of her mother to disaffirm said deed. But just here the difficulty arises to determine in what time the plaintiff, Nancy, as *heir* of her mother, must exercise this right and power of disaffirmance. Must she do it within the period limited to her mother, had she lived, or is she allowed the full statutory period, after attaining her own majority?

The reason why the mother was not permitted or required to exercise the right of disaffirmance before reaching her majority, doubtless arose. from the real or supposed immaturity of her judgment and experience to determine so important a matter. At the mother's death, she wanted nine months, only, of being twenty-one years of age. At the same period the plaintiff was an infant, some nine months old, only. If the mother, at the comparatively ripe age of twenty years, out of regard to her minority, is not required or permitted to disaffirm before attaining twenty-one years of age, it may be asked why the heir, then an infant of nine months, only, should not be allowed the full statutory period after attaining its majority, in which to determine the same matter? The only answer to this question, adverse to the claim of the infant, if any, grows out of the recognized doctrine that, in such cases, one disability cannot be tacked to another, so as to prolong the time, or out of the further fact, if fact it was, that the right and

power to disaffirm the deed first accrued to the mother. And the question is, does that doctrine, or fact, if such it was, apply under the facts of this case? It is contended for plaintiff, Nancy, that the right and power to disaffirm said deed never did fully accrue to the mother in her lifetime. For her it is insisted that the period at which alone she could disaffirm, owing to her death, never did arise to her. The matured right to disaffirm, it is, therefore, argued, *first* accrued to the *heir* and not the mother. The solution of this question is determinable, we imagine, by analogy, by the rule prescribed in the statute of limitations governing real actions, in sections 3222 and 3224, Revised Statutes of 1879.

Section 3222 provides that, ''If any person entitled to commence any action in this article specified, or to make any entry, be, at the time such right or title shall first descend or accrue, either within the age of twenty-one years, * * * or a married woman, the time during which such disability shall continue shall not be deemed any portion of the time in this article limited, for the commencement of such action or the making of such entry; but such person may bring such action or make such entry after the time so limited, and within three years after such disability is removed * * * .''

Section 3224 enacts that: '' If any person entitled to commence such action, or to make such entry, die during the continuance of any disability specified in section 3222, and no determination or judgment be had of the title, right or action to him accrued, his heirs, or any person claiming from, by, or under him, may commence such action or make such entry after the time in this article limited for that purpose, and within three years after his death, but not after that period.''

It may be well to remark, first, without going into details, that actions like this, in important particulars, are unlike and distinguishable from that large class of

cases where title is claimed and created by adverse possession, under the statute of limitations, and for that reason many of the vexed and difficult questions in that class of cases do not arise and have but little or no application to the case at bar. Under these provisions, it is claimed for the defendant that, while the heir may commence such action after the time so limited therein, he must, also, commence the same *within three years* after the ancestor's death, but not after that period. This, the defendant insists, is the plain, manifest, and literal import and meaning of these provisions. If the defendant is correct in this construction of the statute of limitations, it would seem logically and necessarily to follow that the attempted disaffirmance of the deed in question by the heir was not timely and seasonably made, and that the right and power so to do, together with the right to maintain ejectment, incident thereto, was and is barred, by analogy to the rule so provided in the statute of limitations. This conclusion of the defendant, it may be conceded, is correct, *provided* it can be fairly and justly held that the ancestor of the plaintiff, under the facts of the case, was ever entitled and empowered to disaffirm the deed in question. If, in point of fact, no such right and power ever *accrued* to the ancestor, then it would seem to follow that the defendant's conclusion and construction of the statute of limitations is not the correct one, and, in that event, plaintiff's action is not barred.

This, it may be conceded, is the vital question and turning point in the case. In order to its proper determination, it is only necessary, it seems to me, to recur to the fundamental and original proposition in the case ; that is, " that the deed in question was not void, but voidable, only, at her election, upon attaining her majority, and not before." It is not pretended that the wife, in her life time, either with or without the concurrence of her husband, could have maintained an action

of ejectment for the recovery of the land. It is conceded that no such right existed, *prior* to some valid act of disaffirmance of the deed.       Under the facts, no such disaffirmance was or could have been performed, in her lifetime.       There never was a period during her life when she could have disaffirmed the deed, or even *elected* to do so.       How, then, can it be logically or rationally said that any right to disaffirm or maintain ejectment ever accrued to the ancestor, in her lifetime? Such a position seems to me, necessarily, untenable.       "Its bare statement furnishes its own refutation."       The ancestor, during the whole period of her life, between the date of the deed and that of her death, was, it will be remembered, under double disabilities, that of minority and coverture; her right, however, was based *alone* on that of infancy. She was, also, disabled to sue, if otherwise entitled, during her life, by the force of the deed in question conveying her husband's marital rights to the lands during their joint lives, or if his title was that of courtesy, instead, then during his life as surviving husband.       But in no event was she entitled to sue *prior* to some valid disaffirmance of her deed to Masters, under which defendant claimed.       The right of the ancestor in its very nature was confessedly *inchoate*, and one which, had she lived the full statutory period of limitation after attaining her majority, she might never *choose* to exercise, and when she died it descended to the plaintiff, Nancy, as her sole heir at law, who was the *first* and only person in or to whom the right did or could *accrue*.

From the moment of the ancestor's death, the *heir* by inheritance was invested with the right of election and disaffirmance, and was the person to whom that right and power *first* accrued, or could accrue; and, being at the time an infant some nine months old, she had, under the law and the facts, the statutory period of three years, after attaining her majority, in which to make her election of disaffirmance and execute the same

by the institution of this suit, with the concurrence of her husband, which, in itself, was at once a valid disaffirmance of said deed, and the commencement of the appropriate action for the recovery of the possession of the land. Let us suppose, for example, that the ancestor, instead of having the right to disaffirm her voidable deed upon attaining her majority, had possessed a promissory note for one hundred dollars, due and payable to her, separately, or with her husband, twelve months after date, in which she was the meritorious cause of action, and suppose that she or her husband, one or both, had died before the maturity of the note, would any one contend that any right of action accrued on said note during the life of the party so dying? And yet, what is the difference in principle between that case and the one at bar? In either case, it is true, there is a right to be exercised or enforced, but only at a future date, which, under the facts in this case, it is conceded never arose to the party so dying. It is of the essence of the statute of limitations not to run against a party until a right of action has accrued to such party. The statute, strictly speaking, it must be remembered, whether expressly or by analogy, deals only with the right of action, and when there is no such right, there can be no bar. In such case there is nothing for the statute to operate upon, or to set the same in motion.

But waiving all that is heretofore said, there is another view of this case equally fatal to the construction of the statute claimed for the defendant, and wholly independent of the ancestor's right to disaffirm said deed. As hereinbefore stated, but not elaborated, the deed of husband and wife for the land in question vested in the grantee of said deed, and those claiming under him, an outstanding estate, for at least the joint lives of husband and wife, and if the husband's right was that of tenant by courtesy initiate or consummate, then during the life of the surviving husband. In such case, all the

authorities agree that during the continuance of such particular estate (whether before or after the disaffirmance of said deed), the wife, either with or without the concurrence of her husband, cannot maintain ejectment for possession of said land.    *Foster v. Marshall*, 2 Foster, 491 ; *Jackson v. Schoonmaker*, 4 Johns. 390 ; *Moore v. Jackson*, 4 Wend. 58 ; *Mays' Heirs v. Hill*, 5 Littell (Ky.) 307 ; *Gill & Simpson v. Fauntleroy's Heirs*, 8 B. Monroe, 184, 185 ; *Mercer v. Selden*, 1 Howard (U. S.) 51, 55 ; *Sims v. Everhardt*, 102 U. S. Rep. 300 ; *Witham v. Perkins*, 2 Greenl. 400 ; *Stubblefield v. Menzies*, 8 Sawyer, 41 ; *Jackson v. Johnson*, 5 Cowen, 75 ; *Sims v. Bardoner et al.*, 86 Ind. 87 ; and the following Missouri cases :    *Dyer v. Brannock*, 66 Mo. 392 ; *Miller et al. v. Bledsoe*, 61 Mo. 96 ; *Carr v. Dings*, 54 Mo. 95 ; *Littleton v. Patterson*, 32 Mo. 357, 365 ; 74 Mo. 633 ; 72 Mo. 173 ; 66 Mo. 432 ; *Poe et al. v. Domic*, 54 Mo. 119, at p. 125.

It is conceded that the wife died during the continuance of this particular estate, or, at least, did not survive it.    No cause of action, therefore, ever accrued to her, and the statute never commenced to run against her. The heir, therefore, then an infant nine months old, must, necessarily, be the person first entitled to sue, and against whom the statute first commenced to run.    Being an infant, she had the full statutory period in which to disaffirm said deed and commence said suit.    Section 3222 of the statute of limitations, by its terms, deals only with persons entitled to commence an action or make an entry, and section 3224 of the same act has no application to the heir of a person not thus entitled. The facts of this case make it peculiar.    It differs from the ordinary case of a minor or married woman in whom the title or fee to real estate actually vests, or is vested at the time.    Such an infant or married woman, whose real estate is actually possessed and claimed adversely, although excused by reason of minority or coverture, yet such an infant or married woman, with the consent of

Harris v. Ross.

guardian or husband, may, if she choose, commence such action during minority or coverture, and it may be conceded that if such minor or married woman die before such disability is removed, then the heir of such person would be within the purview of section 3224, *supra*, and bound to sue within three years after her death. But that is not this case. Here, the ancestor, from the date of her deed from herself and husband up to her death, while yet a minor, was wholly divested of the title to said real estate. During that time it was not possible for her, by reason of her minority, to disaffirm said deed and thereby regain such title, and without it she was not entitled to commence suit within the meaning of section 3222, *supra*. If that be so, upon her death, her heir, the plaintiff, was not within the purview of section 3224, or obliged to sue within three years after her death, but had the full statutory period in which to commence such action, as before stated.

The doctrine prohibiting the tacking of disabilities does not attach to the transmission of an inchoate right from ancestor to heir, like the one at bar. In order to evoke that doctrine there must have been something more than an incipient or an incomplete right; in other words, something entitling the ancestor to sue, and some failure to do so. In this case there was and could be no failure. It follows, therefore, that the disaffirmance of the deed and the institution of the suit were both timely and seasonably made and commenced, and that plaintiff's right of action was not and is not barred. It also follows that there was error in giving and refusing said instructions, of which it is sufficient to say that upon a retrial they should be so modified as to conform to the views herein expressed. The finding and judgment of the court were also erroneous.

For the reasons above stated, the judgment of the circuit court is reversed and the cause remanded. Henry, C. J., concurs fully; Black and Sherwood, JJ., concur in the result, and Norton, J., dissents.